UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MELISSA PENA, §
§
  Plaintiff, §
VS. § CIVIL ACTION NO. 4:18-CV-00671
§
GOLDEN CORRAL CORPORATION, §
§
  Defendant. §

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

Before the Court is the defendant's, Golden Corral Corporation (the "defendant") motion for summary judgment pursuant to Rule 56 (Dkt. No. 18), the plaintiff's, Melissa Pena (the "plaintiff") response to the defendant's motion (Dkt. No. 20), and the defendant's reply (Dkt. No. 22). The defendant's motion is **GRANTED**.

## II.    FACTUAL BACKGROUND

In March of 2016, the plaintiff became the general manager of one of the defendant's Houston restaurant locations. Shortly thereafter, the defendant started receiving complaints from the plaintiff's subordinates regarding her mistreatment of staff.  For instance, in May of 2016, staff complained that the plaintiff yelled at employees, threatened their jobs and called employee names making some cry. In June of 2016, a member of her staff reported that the plaintiff discriminated against non-Hispanic employees. In July of 2016, a staff member reported that the plaintiff discriminated against Hispanics causing a decline in morale. Subsequently, the company's director of employee relations, Scott Schaberg (Schaberg) conducted an onsite

investigation into the plaintiff's behavior. After hearing several complaints from employees, Schaberg required the plaintiff to participate in an online leadership class to assist with improving her attitude and communication with her employees. On February 27, 2017, a staff member contacted the defendant's Ethics and Compliance Hotline and reported that the plaintiff was treating non-Hispanic employees disrespectfully and that the plaintiff had directed her child, who was not employed by the defendant, to take company computer-based trainings (CBT)[1] in the place of restaurant employees.

On March 7 and 8, 2017, Schaberg conducted a second onsite investigation into the issues raised. At the restaurant, he questioned staff about the plaintiff's behavior towards employees. Some staff reported that the plaintiff showed favoritism toward back-of-house staff. Others reported similar complaints to those made in 2016. They stated that the plaintiff was rude, talked down to employees and belittled them. Some complained that when they had a conflict with employees who spoke Spanish, the plaintiff would speak to that employee in Spanish without translating what she said into English, thus preventing the non-Spanish speaking employee involved in the conflict from understanding what the plaintiff said. In addition, during the investigation, two employees, stated that the plaintiff's daughter, who does not work for the defendant, had completed CBTs. Schaberg also viewed video footage of the plaintiff's daughters walking into the CBT room. Further, one employee informed Schaberg that during her time working under the plaintiff, the plaintiff had also directed her and others to complete CBT courses on behalf of other employees.

---

[1] According to the defendant, its CBT programs consist of training videos and tests that teach employees how to perform their specific job functions within the restaurant (e.g., baker, cold prep, cook, server, etc.), and also train employees on the defendant's policies and procedures, including the EEO Policy, Rules of Conduct, Code of Ethics, sanitation and cleanliness, and various other policies that employees must know to adequately to perform their jobs.

Following his visit, Schaberg prepared a memorandum summarizing his investigative findings. On March 13, 2017, he submitted the memorandum to the senior vice president of human resources, and vice president of company operations to obtain their input on how to proceed with disciplining the plaintiff for violating the company's code of ethics and offending staff. On March 15, 2017, the decision was made to terminate the plaintiff. On March 17, 2017, the plaintiff e-mailed Schaberg requesting to make a complaint against District Manager Kurt Parry (Parry) for gender and race discrimination. On March 20, 2017, the plaintiff was terminated.

On January 29, 2018, the plaintiff filed suit in state court against the defendant alleging that its agents and employees engaged in sex and race discrimination and retaliation in violation of the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.051 ("TCHRA"). Subsequently, the defendant removed the case to this Court. On February 10, 2019, the defendant filed a motion for summary judgment.

III.    APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex*, *Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed. 2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)).

Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

## IV. ANALYSIS & DISCUSSION

### A. The Plaintiff's Race and Gender Claim

The plaintiff contends that the defendant violated the TCHRA when it terminated her employment because she is a Hispanic female. Under the TCHRA, it is unlawful for an employer to terminate an employee based on race or gender. Tex. Lab. Code § 21.051. The Fifth Circuit has held that in cases where no direct evidence of discriminatory intent has been produced, proof by means of circumstantial evidence must be evaluated using the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 s. Ct. 1817, 36 L.Ed 668 (1973). But first, the plaintiff must establish a *prima facie* case for such a violation. The plaintiff must show that: (1) she is a member of a protected class, (2) she is qualified for the position, (3) she suffered an adverse employment action, and (4) others outside the class who are similarly situated were treated more favorably. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

Once the employee makes this showing, the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. *Id*. at 142-143. "If the employer meets its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish that the reason proffered by the employer is merely a pretext for discrimination." *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 534 (S.D. Tex. 1999). "Although intermediate evidentiary burdens shift back and forth under the McDonnell Douglas framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 133, 143, 120.

In this case, it is undisputed that the plaintiff has satisfied the first three elements of her *prima facie* discrimination claim. She is a member of a protected class – Hispanic female, was qualified for the position she held and her employment was terminated. The plaintiff maintains that she has satisfied the fourth element as well. The plaintiff argues that Tammy Yust (Yust) a Caucasian woman who served as a kitchen assistant manager (KAM) is similarly situated. The plaintiff contends that while she was a salaried general manager and Yust was an hourly employee, both were management level employees in charge of the daily operations of the restaurant and managing employees. She adds that they both had the same supervisor and therefore are similarly situated. During Schaberg's investigation, Yust informed him that the plaintiff directed her to complete the CBTs on behalf of other employees. The plaintiff contends that Yust committed the same alleged offense, however, she was only written-up which is more favorable than termination. She asserts that this is clear proof of discrimination.

The defendant maintains that the last element is not satisfied because Yust was not similarly situated to the plaintiff. The defendant asserts that the plaintiff was in charge of the

entire Houston restaurant, where as Yust was an hourly employee subject to the plaintiff's supervision. The plaintiff was tasked with ensuring compliance with all company policies including the "Code of Ethics" and with ensuring that co-workers and assistant managers participated and were certified in the CBT programs. The defendant adds that unlike the plaintiff, Yust did not possess the ultimate responsibility over the restaurant's operations and CBT work. Further, the defendant claims that while the CBT matter was the driving force behind the plaintiff's termination, the complaints regarding the plaintiff's rude behavior and communication problems factored into the decision as well.

The court finds that the fourth element has not been satisfied. The Fifth Circuit has determined that employees with different supervisors, different work responsibilities, and dissimilar violations are not similarly situated. *See Lee v. Kansas City Southern Ry. Co.*, 574 F3d 253, 259 (2009). Therefore, the plaintiff has not raised an issue of material fact here. Moreover, the plaintiff has failed to prove that she and Yust shared the same supervisor and job responsibilities. Albeit, Parry is identified as a manager, he is specifically identified as the district manager. As restaurant general manager, the plaintiff reported to the district manager. As a KAM in the restaurant, Yust reported to the plaintiff. Consequently, the plaintiff and Yust did not have the same supervisor.

Further, the plaintiff and Yust did not have the same job responsibilities. As general manager the plaintiff was responsible for managing the entire restaurant, including the KAMs like Yust. Moreover, the plaintiff also failed to prove that she and Yust had comparable violation histories. Unlike the plaintiff, other employees had not made complaints regarding Yust being disrespectful or displaying discriminatory behavior at work. Here, the plaintiff is accused of directing her daughter and employees to complete CBTs on behalf of other employees. The

record, however, does not include any allegations of Yust directing anyone to do the same. Finally, the plaintiff signed the code of ethics acknowledging that she read and understood the code of ethics before the violation. The plaintiff has failed to prove the fourth element of the *prima facie* case. The record before the court does not support a finding that the plaintiff and Yust were similarly situated.

### B. *The Plaintiff's Retaliation Claim*

The TCHRA prohibits an employer from retaliating against an employee for engaging in certain protected activities. TEX. LABOR CODE ANN. § 21.055 (Vernon 2006). Protected activities include filing complaint. *Anderson v. Houston Community College System*, 458 S.W. 3d 633, 647 (2015). Making a *prima facie* case for a retaliation claim requires the plaintiff to demonstrate that: (1) she enaged in a protected activity; (2) an adverse employment action occurred, and (3) a causal connection exists between the protected activity and the adverse action. *Gorman v. Verizon Wireless Texas*, L.L.C. 753 F.3d 165, 170 (2014). If the employee makes a *prima facie* showing of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for her termination. *Gorman*, 753 F.3d at 171.

The plaintiff contends that the defendant violated the TCHRA when it retaliated against her by terminating her employment because she filed a complaint. The plaintiff maintains that she has satisfied the requirements of the *prima facie* case and alleges that a couple of days after she alerted the company that she was experiencing race and gender discrimination the defendant terminated her. The defendant argues that the plaintiff cannot satisfy the third element of a retaliation claim because no causal link exists between her alleged protected activity and the termination. The defendant maintains that the record confirms that the decision to terminate her employment was made on March 15, 2017. However, before Schaberg could return to Houston

to notify the plaintiff of her termination, the plaintiff emailed him expressing her wishes to make a formal complaint against Parry and one of her employees. On March 20, 2017, the plaintiff returned to work after vacation and was terminated. The defendant maintains that the plaintiff's email had no impact on the decision to terminate her employment and her retaliation claim fails as matter of law.

The court finds that the plaintiff has not satisfied third element for a retaliation claim. An employee asserting a retaliation claim must establish that, in the absence of her protected activity, the employer's prohibited conduct would not have occurred when it did. *Anderson*, 458 S.W. 3d. at 647. The plaintiff has failed raise an issue of material fact in this regard. Schaberg's investigation yielded security video footage showing the plaintiff's daughter had been present at the restaurant and in the room where the CBTs were taken on the day that CBTs were completed for some of the restaurant employees. Additionally, two employees reported that the plaintiff asked them to complete CBTs for other employees. This behavior violated the defendant's code of ethics and the defendant made a determination regarding the plaintiff's employment subsequent to such findings.

It is reasonable that the defendant would take action in light of the investigation findings. Perhaps the absence of such an investigation into the allegations against the plaintiff would allow the court to determine a nexus between the complaint and the termination. But in this instance the plaintiff's termination came promptly after the second onsite investigation was completed. Based on the record it appears reasonable that the plaintiff would have been terminated regardless of her filing a complaint. Moreover, the defendant has provided a legitimate non-discriminatory reason for the terminating the plaintiff. The impetus for the termination was the

plaintiff's inability to address concerns regarding her treatment of staff and for directing employees and her child to complete CBTs on behalf of other employees.

V.      **CONCLUSION**

Based on the foregoing analysis and discussion, the defendant's motion for summary judgment is **GRANTED**.

It is so **ORDERED**.

SIGNED on this 30th day of May, 2019.

_____
Kenneth M. Hoyt
United States District Judge